

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-18-00122-CV

**IN THE INTEREST OF B.B.B.**

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 16-2157-CV
Honorable Don Burgess, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  July 18, 2018

AFFIRMED

In September 2016, the Texas Department of Family and Protective Services brought suit to terminate the parental rights of Jadie B. to her newborn son, B.B.B. After a jury trial was conducted over a four-day period in February 2018, the trial court signed an order terminating her parental rights based on (D), (E), (N), (O), and (P) grounds in conformity with the jury's verdict. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P) (West Supp. 2017). Jadie B. appeals the trial court's order terminating her parental rights. On appeal, she does not contest the statutory grounds for termination but argues only the evidence is legally and factually insufficient to support the jury's finding that termination of her parental rights is in her child's best interest. *See id.* § 161.001(b)(2). We review the legal and factual sufficiency of the evidence to support a

best-interest finding under the standards enunciated in *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In considering the best interest of the child, a factfinder may consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Further, section 263.307 of the Family Code lists factors to be considered in determining whether the child's parent is willing and able to provide the child with a safe environment. *See* TEX. FAM. CODE ANN. § 263.307 (West Supp. 2017). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

At the jury trial, the Department presented a number of witnesses, including a neonatologist, a clinical psychologist, Department caseworkers, and B.B.B.'s foster parent. The evidence showed that when Jadie B. gave birth in September 2016, both she and B.B.B. tested positive for benzodiazepine and methamphetamine. Although B.B.B. had no symptoms related to Jadie B.'s drug use, there was evidence that babies born with methamphetamine in their systems can be affected later in life with conditions such as cognitive difficulties, behavioral abnormalities, motor difficulties and learning disabilities.

The evidence also showed that at the hospital, Jadie B. admitted to a Department caseworker that she had used crystal meth every day since September 2013 and that she had last used meth two weeks before giving birth. Jadie B. reported that she had four other children who were living with relatives because she was not able to take care of them. According to testimony, Jadie B. was allowed to take B.B.B. home from the hospital with the requirement that Jadie B.'s

father was to be present when Jadie B. was caring for B.B.B. When the Department discovered Jadie B. had failed to comply with this requirement by turning over B.B.B.'s care to some friends, B.B.B. was removed from Jadie B.'s care and placed in foster care.

The evidence at trial showed that a Department caseworker developed a service plan for Jadie B., which required Jadie B. to submit to a psychological evaluation, participate in in-patient drug treatment, maintain contact with the Department, complete a parenting class, attend parent-child visits, have no new crime activity, and clear up pending criminal charges. The service plan was made an order of the court. At the first permanency hearing, Jadie B. was not compliant with the service plan, and had only completed the psychological evaluation. At the second permanency hearing, Jadie B. was still not compliant with her service plan. According to the Department caseworker, Jadie B. made excuses for her non-compliance by saying she is a drug addict and not in a place to receive help. Even the week before trial, Jadie B. continued to say she was a drug addict and the services would do no good.

According to the evidence at trial, Jadie B. was incarcerated about eight and one-half months of the sixteen months during which the case was pending. She was incarcerated a total of four times—two times for felony possession of methamphetamine; one time for theft; and one time for failing to identify, providing false information, and having outstanding warrants. Of all the items on the service plan, the only ones Jadie B. complied with were obtaining the psychological evaluation and participating in a parenting class while she was incarcerated. Out of a possible sixty-four visits with B.B.B., she attended only six. According to evidence at trial, Jadie B. gave excuses for not visiting B.B.B., including her incarceration, her drug addiction, and her active warrants. The last visit Jadie B. had with B.B.B. was in March 2017, almost a year before trial began. According to the Department caseworker, they tried but were not able to find a suitable relative placement for B.B.B.

The Department caseworker testified that Jadie B. has never made a plan for B.B.B. According to the caseworker, instead of considering B.B.B.'s best interest, Jadie B. was concerned about herself, using her drug addiction and mental health issues as excuses. The caseworker further testified Jadie B.'s criminal activity put B.B.B. at risk for physical danger. According to the caseworker, Jadie B. had not demonstrated an ability to meet B.B.B.'s physical and emotional needs now and in the future. She had not demonstrated a willingness to overcome her addiction and address her mental health concerns. Jadie B. had not maintained housing or employment. Further, she had no financial means to provide for B.B.B., and she had no plans going forward for when she is no longer incarcerated.

The evidence at trial also showed B.B.B. was doing very well in his foster family placement. All his needs were being met in a loving, nurturing home. According to B.B.B.'s foster father, B.B.B. has lived in the foster placement for about a year and a half. The foster parents love him and care for him. They have three adopted children (ages twelve, six and three), with whom B.B.B. has bonded. The foster parents love B.B.B. and would like to adopt him.

The clinical psychologist who administered the psychological evaluation of Jadie B. testified that Jadie B. presented as guarded and suspicious. Jadie B. tended to deflect blame onto others to minimize her own responsibility regarding the allegations of the case. Jadie B. reported that the Department investigator had lied, was "gunning" for her child, and that the "system was against her." Further, the psychologist noted discrepancies between what Jadie B. told Department investigators about drug use and what Jadie B. reported to him. These discrepancies made him question Jadie B.'s credibility. According to the psychologist, Jadie B. said her parents had abused drugs and alcohol, and engaged in domestic violence. Jadie B. reported she had been physically and emotionally abused by her parents. She also reported she had been raped at age sixteen, and now has post-traumatic stress syndrome and depression. According to the psychologist, there is a

pattern of behavior from Jadie B.'s childhood that causes him concern. The psychologist testified that if Jadie B. is unable to admit responsibility, she cannot benefit from services and the problems will keep occurring. When the psychologist administered psychological testing, Jadie B. had an elevated score on the Child Abuse Potential Inventory, which means she has a higher risk of physical child abuse. The psychologist diagnosed Jadie B. with post-traumatic stress syndrome, bipolar disorder, borderline personality disorder, methamphetamine disorder, and a history of child abuse as a child. After evaluating Jadie B., he recommended that Jadie B. see a psychiatrist so that she could be treated with medication. He also recommended that Jadie B. engage in individual counseling, attend a parenting class, obtain employment, and have no new romantic relationships for a year so she can focus on her recovery. Without following these recommendations, he believed Jadie B. would continue her same pattern of behaviors.

Jadie B. testified on her own behalf at trial. She also presented witnesses, including her mother and a facilitator of a trauma and substance abuse group.

The trauma and substance abuse group facilitator testified that Jadie B. was part of a voluntary group she led in the Bexar County Jail. The purpose of the group was to educate participants on trauma and substance abuse disorders, healthy relationships, self-esteem, and domestic violence. The facilitator testified Jadie B. was very attentive and was a leader whom the other women looked up to. Jadie B. was helpful, respectful, engaged, and committed to the group. According to the facilitator, Jadie B. admitted she had been self-medicating, and she was doing what she needed to do to address her demons.

Jadie B.'s mother testified that she lives out of state and had never been contacted by the Department about the removal of B.B.B. She testified Jadie B.'s other four children live with various family members, but Jadie B. has legal custody. Jadie B.'s mother believes Jadie B. has the capability of being a good mother to B.B.B.

Jadie B. testified that she is a recovering addict and she has a mental disorder, and needs help for both of her conditions. According to Jadie B., until two years ago, she had full custody of her other four children, but then placed them with their fathers and paternal grandmother because she knew she was messing up and did not want her children in that environment. Jadie B. testified that when this case began, she was stuck in her addiction and chose to self-medicate, but claimed she has now changed by addressing her addiction and coming to terms with why she was an addict. She testified she was not able to comply with the court-ordered service plan because she had no transportation. Additionally, she did not go to in-patient drug treatment because the treatment facility she chose was in Dallas, and the Department caseworker would not transfer B.B.B. to Dallas so she could visit with him. According to Jadie B., the Department caseworker never set up individual therapy for her.

Jadie B. does not believe termination is in B.B.B.'s best interest. According to Jadie B., he deserves to know her and know that she loves him. Jadie B. testified she believes she can provide for his emotional and physical needs now and in the future. Her long-term plans are for B.B.B. to grow and be healthy, happy, prosperous, enjoy life, and to know he is loved by her and his siblings. At the time of trial, however, Jadie B. was incarcerated and had been there for three months.

In looking at all the evidence in the light most favorable to the jury's finding, we hold that the jury could have reasonably formed a firm belief or conviction that termination of Jadie B.'s parental rights was in B.B.B.'s best interest. *See In re J.O.A.*, 283 S.W.3d at 344. The evidence showed that Jadie B. used methamphetamines while pregnant with B.B.B., failed to comply with her court-ordered service plan, and engaged in criminal activity resulting in her incarceration four times throughout the pendency of the case. The evidence also showed B.B.B. had lived with a foster family for about a year and a half, and was being cared for and nurtured by the family who

wanted to adopt him. Thus, the evidence is legally sufficient to support the jury's best-interest finding.

With respect to factual sufficiency, Jadie B. points to evidence showing that, although B.B.B. was initially removed from Jadie B. because of her involvement with drugs, Jadie B. has admitted to her addiction and has taken steps to address her addiction and mental health concerns. Jadie B.'s arguments, however, fail to address the fact that, during the time the case was pending, she did not attend in-patient drug treatment, and she continued to use drugs and engage in criminal activity, which resulted in her incarceration. Therefore, in considering the entire record, including any disputed evidence, we conclude the evidence is factually sufficient to support the jury's finding that termination of Jadie B.'s parental rights was in B.B.B.'s best interest. *See id.* at 345.

We therefore affirm the trial court's order terminating Jadie B.'s parental rights.

Karen Angelini, Justice